UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 19-35** |
| **JOSHUA TAPP** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendant Joshua Tapp's Motion to Suppress (Doc. 206). For the following reasons, the Motion is DENIED.

## BACKGROUND

Defendant Joshua Tapp is charged in the Second Superseding Indictment with drug trafficking and firearm charges. During execution of the warrant for his arrest, two searches of his home were conducted. Defendant moves to suppress evidence discovered in those searches. The Court held a hearing on Defendant's Motion to Suppress on January 22, 2020, and the following facts were revealed.

In the early morning hours of February 26, 2019, members of the FBI and the St. Tammany Parish Sheriff's Office gathered to execute an arrest

1

warrant on Tapp at his residence. Prior to executing the warrant, the officers learned of the criminal histories of Tapp and his girlfriend, Jeanine Daniels. Specifically, the officers learned that Tapp had previously been involved in a shootout.

After knocking and announcing, the officers were able to positively identify Defendant in the home when he looked out of the window. Tapp then began moving his couch to block the front door. At that point, the officers attempted but were unable to breach the front door. They then made a forced entry to the home through the rear door. After the officers entered the home, both Tapp and Daniels voluntarily exited the master bedroom and were detained without incident.

After both Tapp and Daniels had been secured, the officers conducted a protective sweep to ensure that there were not other individuals in the home. During the sweep, officers found a handgun between the mattress and the box spring in the master bedroom and a rifle magazine inside the washing machine. They also noticed the smell of marijuana in the home. Officers applied for a search warrant based on these findings. The warrant application did not specify a crime charged. The warrant was issued, and the search produced additional firearms, currency, and drug paraphernalia.

## LAW AND ANALYSIS

Defendant seeks the suppression of evidence obtained directly or indirectly as a result of (1) the warrantless search of his home and (2) the subsequent search performed pursuant to a defective warrant.

I. **Warrantless Search**

Warrantless searches and seizures inside a home are presumptively unreasonable under the Fourth Amendment.[1] "[T]his presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness."[2] Here, the Government argues that it was reasonable for officers to perform a protective sweep of the residence after Defendant had been arrested. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."[3] The Supreme Court has held that "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."[4] The Fifth Circuit has instructed that the validity of a protective sweep should be determined by considering whether:

> (1) the government agents have a legitimate law enforcement purpose for being in the house; (2) the sweep is supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the sweep is no more than a cursory inspection of those spaces where a person may be found; and (4) the sweep lasts no longer than is necessary

---

[1] Kentucky v. King, 131 S.Ct. 1849, 1856 (2011).
[2] *Id.* (citing Brigham City v. Stuart, 547 U.S. 398, 403 (2006)) (quotations omitted).
[3] Maryland v. Buie, 494 U.S. 325, 327 (1990).
[4] *Id.*

3

to dispel the reasonable suspicion of danger and lasts no longer than the police are justified in remaining on the premises.[5]

The Court will consider each factor in turn.

### a. Officers' Legitimate Presence

When officers possess an arrest warrant and probable cause to believe the defendant is in his home, they are entitled to enter and to search anywhere in the house in which the defendant might be found.[6] Accordingly, the officers were legally inside Defendant's home pursuant to the arrest warrant.

### b. Justifiable Search

The Fifth Circuit has instructed that courts should consider "the totality of the circumstances surrounding the officers' actions" when determining whether a protective sweep is justified.[7] "If reasonable minds could differ on whether the sweep was warranted, [the court should] not second-guess the judgment of experienced law enforcement officers concerning the risks in a particular situation."[8]

The Government argues that the officers were justified in performing a protective sweep in light of the criminal histories of Defendant and Daniels, the charges for which the arrest warrant was issued, Defendant's behavior in attempting to barricade the door, and the smell of marijuana in the home. This Court agrees. The officers were justified in ensuring that other individuals were not hiding in the home while they performed necessary tasks such as securing the home after their forced entry.

---

[5] United States v. Lim, 897 F.3d 673, 688 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 852 (2019).
[6] *Buie*, 494 U.S. at 332–33.
[7] United States v. Silva, 865 F.3d 238, 241–42 (5th Cir. 2017).
[8] *Id.*

*c. Scope of Search*

Here, Defendant argues that the officers' sweep went beyond "spaces where a person may be found" when they looked between the mattress and box spring and inside the washing machine. The Government argues that a motivated assailant could hide in these tight spaces.

This Court finds that the officers were reasonable in looking into the washing machine. At the suppression hearing, it was established that the lid of the washing machine was open and that the rifle magazine could easily be seen by peering into the tub of the machine. Corporal David McNeese, one of the officers who conducted the protective sweep, testified that he had personally found individuals hiding inside of dryers and that he was aware that individuals could hide in washing machines without agitators.[9]

McNeese also testified that he had previously found an individual hiding in a hollowed-out box spring under a mattress. The Government argues that it is therefore reasonable to look between the mattress and box spring during a protective sweep. This Court declines, however, to address the issue of whether searching between a mattress and box spring is appropriate given the narrow scope of a protective sweep. The Court need not address this question because, as discussed below, the search warrant had sufficient probable cause even without the discovery of the handgun under the mattress. Further, the

---

[9] *See* United States v. Jollivette, No. 6:10-0370, 2011 WL 1740111, at *1 (W.D. La. Apr. 13, 2011), *report and recommendation adopted sub nom*. United States v. Jolliette, No. CRIM.A. 10-370, 2011 WL 1740176 (W.D. La. May 4, 2011) ("[Defendant] was found hiding inside an electric clothes dryer in the kitchen by another deputy.").

handgun would have inevitably been discovered during execution of the search warrant.[10]

   d. *Length of Search*

Defendant does not present any argument regarding the length of the protective sweep.

Accordingly, the factors indicate that the protective sweep was reasonable under the Fourth Amendment as to the rifle magazine found in the washing machine. The Court declines to make a finding regarding the reasonableness of the discovery of the handgun under Defendant's mattress during the protective sweep but finds that its discovery was inevitable in light of the subsequent search pursuant to a warrant. Accordingly, neither item will be suppressed.

**II. Search Warrant**

Defendant next argues that the evidence seized pursuant to the search warrant should be suppressed because (1) the illegal warrantless search tainted the information included in the affidavit used to procure the search warrant and (2) the warrant did not identify the suspected crimes.

Pursuant to the exclusionary rule, a court must suppress evidence that was seized on the basis of a warrant that was not supported by probable cause.[11] Probable cause "exists where the facts and circumstances within [the officials'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable

---

[10] Under the inevitable discovery doctrine, "the exclusionary rule [is] inapplicable to otherwise suppressible evidence if that evidence would inevitably have been discovered by lawful means." United States v. Jackson, 596 F.3d 236, 241 (5th Cir. 2010).

[11] United States v. Pope, 467 F.3d 912, 916 (5th Cir. 2006) (citing Mapp v. Ohio, 367 U.S. 643 (1961)).

caution in the belief that a criminal offense had occurred and the evidence would be found in the suspected place."[12] Defendant argues that the handgun and rifle magazine impermissibly discovered during the protective sweep cannot supply probable cause for the subsequent search warrant. The Government contends that even if the protective sweep was defective, the warrant still had probable cause pursuant to the independent source rule. The Fifth Circuit espouses a two-part analysis to determine whether the independent source rule applies: "(1) does the warrant affidavit, when purged of tainted information gained through the initial illegal entry, contain sufficient remaining facts to constitute probable cause . . . ; and (2) did the illegal search affect or motivate the officers' decision to procure the search warrant . . . ."[13]

This Court has already held that the discovery of the rifle magazine was reasonable. While it declined to reach a decision regarding the handgun found under Defendant's mattress, even removing that gun from consideration, this Court finds that the warrant affidavit had probable cause to support the issuance of a warrant. The discovery of the rifle magazine, smell of marijuana, and behavior and criminal history of the Defendant were sufficient to show probable cause. Further, there has been no evidence that the discovery of the handgun motivated the officers' decision to seek a search warrant.

Defendant also argues that the warrant is insufficiently particularized because it fails to identify the crimes of which Defendant is suspected. Both the affidavit and warrant state "No charge at this time" where a charged crime

---

[12] New Jersey v. T.L.O., 469 U.S. 325, 358 (1985) (internal citations and quotations omitted).
[13] United States v. Hearn, 563 F.3d 95, 102 (5th Cir. 2009).

could have been entered. The Fourth Amendment states that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing the place to be searched and the persons or things to be seized*." Defendant cites to a Second Circuit case, which states that "for a warrant to meet the particularity requirement, it must identify the alleged crime for which evidence is sought."[14] Defendant does not identify a Fifth Circuit case espousing a similar rule. Rather, the Fifth Circuit has stated that "[i]n testing whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized."[15] The warrant sufficiently identifies what items are to be seized even if it does not identify a crime charged.[16] Accordingly, this technical error does not violate Defendant's Fourth Amendment rights. The warrant was supported by probable cause, and the items seized in execution of the warrant shall not be suppressed.

## **CONCLUSION**

For the foregoing reasons, the Motion is DENIED.

---

[14] *In re* 650 Fifth Ave. & Related Properties, 830 F.3d 66, 99 (2d Cir. 2016).

[15] United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995).

[16] The warrant specifically lists "[a]ny and all contraband, controlled dangerous substances including but not limited to Marijuana, along with any physical evidence, either substantive or trace, associated with its use, possession, packaging, manufacture, and distribution. Any and all currency believed to be the fruits of illegal drug sales. Any narcotic paraphernalia, including packaging materials, smoking devices, scales, ledgers, records, documents, photographs, videos or electronic storage devices. Any and all types of firearms along with magazines and ammunition. Any other evidence of criminal activity." Doc. 212-4.

New Orleans, Louisiana this 31st day of January, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**